UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

----------------------------------------X

TYSEAN MOORE,

                    Plaintiff,                    **MEMORANDUM & ORDER**

     - against –                                  13-CV-392 (KAM) (LB)

THE CITY OF NEW YORK and NEW YORK CITY
POLICE DETECTIVE THOMAS DELACY, *Shield
#1131*,

                    *Defendants*.

----------------------------------------X

**MATSUMOTO**, United States District Judge:

         Plaintiff Tysean Moore ("plaintiff") brings this

action against the City of New York (the "City") and New York

City Police Department ("NYPD") Detective Thomas Delacy

(together, "defendants"), alleging violations of his civil

rights pursuant to 42 U.S.C. §§ 1983 and 1981 arising from

plaintiff's 2012 arrest for robbery.  Presently before the court

is defendants' motion for summary judgment pursuant to Federal

Rule of Civil Procedure 56.  For the reasons set forth below,

defendants' motion is granted.

**BACKGROUND**

         The following undisputed material facts are drawn from

the parties' submissions on the instant motion, including the

Amended Complaint, depositions, affirmation and declaration,

exhibits, and defendants' statement pursuant to Local Civil Rule

56.1.[1]  Local Civil Rule 56.1 requires that "[e]ach numbered

paragraph in the statement of material facts set forth in the

statement required to be served by the moving party will be

deemed to be admitted for purposes of the motion unless

specifically controverted by a correspondingly numbered

paragraph in the statement required to be served on the opposing

party."  Local Civ. R. 56.1(c).  Because plaintiff has not

disputed the facts set forth by defendants and has not presented

any admissible evidence in opposition to the facts in

defendants' Rule 56.1 Statement, those facts are deemed

admitted.[2]

On May 5, 2012, at approximately 12:05 p.m., three men

wearing hooded sweatshirts and ski masks robbed Concord Liquor

Store in Staten Island, New York at gunpoint.  (Def. 56.1 Stmt.

¶¶ 11-17, 22-24).  An employee who witnessed the robbery, D.L.,[3]

---

[1] The parties have submitted the following memoranda and supporting documents
in connection with the instant motion:  ECF Nos. 26, Declaration of Assistant
Corporation Counsel Ashley R. Garman in Support of Defendants' Motion for
Summary Judgment ("Garman Decl."); 27, Defendants' Rule 56.1 Statement ("Def.
56.1 Stmt."); 28, Defendants' Memorandum of Law ("Def. Mem."); 30, Joint
Deposition Transcript Appendix ("J.A."); 31, Affirmation of Plaintiff's
Counsel, Philip O. Ohene, Esq., in Opposition to Defendants' Motion for
Summary Judgment ("Ohene Affirmation"); 29, Defendants' Reply Memorandum of
Law ("Def. Reply").

[2] Plaintiff failed to submit a Rule 56.1 statement with his opposition, which
failure would provide a basis to conclude that defendants' facts are
undisputed.  Nonetheless, the court has liberally construed plaintiff's
opposition and finds that the facts set forth in defendants' Rule 56.1
statement are generally unchallenged by plaintiff (*see* Ohene Affirmation) and
are not controverted by the admissible evidence.

[3] The complaining victim's name has been partially redacted in the parties'
submissions to protect his privacy interest.

described the men as black males between the ages of 18 and 25. (*Id.* ¶ 22.)  One of the men, dressed in a dark gray hooded sweatshirt, pointed what appeared to be a shotgun at D.L., who was behind the counter when the robbers entered the store, and threatened to kill him.  (*Id.* ¶¶ 13-14; *see* Garman Decl. Ex. I, Criminal Complaint.)  The man with the gun and one of the other men then forced the customers to the back of the store and ordered them to lay face down on the floor.  (Def. 56.1 Stmt. ¶ 15; *see* Garman Decl. Ex. C, NYPD Complaint Report; Exs. D1-D2, Complaint Follow Up Informational Reports ("DD5s"); Ex. I.)  The third individual, wearing a red hooded sweatshirt, jumped over the counter and removed cash from the registers and lottery tickets before the three men fled together out the back door of the liquor store on foot.  (Def. 56.1 Stmt. ¶¶ 17-18.)  Video footage of robbery was captured on the store's surveillance system.[4]  (*See* Garman Decl. Ex. L, Surveillance Video.)

Police officers began to arrive at the liquor store after the three men had fled.  (*Id.* ¶ 18.)  One officer, Officer

---

[4] The surveillance system captured video from four vantage points: above the front door, the back of the store, behind the counter, and directly overhead of the counter.  Plaintiff's counsel states in his affirmation, without further explanation or supporting admissible evidence, that "[a]s is evident in the surveillance video recording, there were three(3) [*sic*] black males involved in the robbery none of whom resembled the Plaintiff Tysean Moore by height, structure or physical appearance."  (Ohene Affirmation at 2.) Although the video captures the events of the robbery, only the most obvious physical attributes of the robbers can be observed (e.g., the size of the individuals relative to other customers and store furnishings, the color of the individuals' sweatshirts) due to the video quality and distance of the camera.

Morales, canvassed the area around the store and encountered a man who told Officer Morales that "Tysean" and two other people had run past him. (*Id.* ¶ 20.) Detective Delacy and his partner, Detective Andrew Bird, subsequently reported to the liquor store and spoke to Officer Morales and witnesses, including D.L. (*Id.* ¶ 22.) D.L. told Detective Delacy that he was working behind the counter when the three men entered the store. (*Id.* ¶ 22.) He told the detectives that the man in a red sweatshirt jumped over the counter, pushed D.L.'s boss to the ground, and forced D.L. to the end of the counter before leaving with cash and lottery tickets. (*Id.* ¶ 24.)

After returning to the Staten Island Robbery Squad, Detective Delacy searched an NYPD database for individuals named "Tysean," based on the name given to Officer Morales. (*Id.* ¶¶ 25-26.) Detective Delacy's search returned an entry for a Tysean Moore, including his photograph and address. (*Id.* ¶ 27.) Detective Delacy then assembled a "set book" of 45 photographs of black men under the age of 30 who had previously been arrested in Staten Island, including the database photo of plaintiff, Mr. Moore, and asked D.L. to come to the precinct. (*Id.* ¶¶ 28-30.) While at the precinct, D.L. looked through the set book and reported to Detectives Delacy and Bird that Tysean Moore was "the guy who robbed [him]." (*Id.* ¶¶ 31, 33; *see also*

Ex. E, Mugshot Photo Viewing Report.)  D.L. specified that he recognized Mr. Moore "through his eyes."  (*Id.* ¶ 32.)

After D.L. had identified plaintiff's photograph, Detective Delacy issued an Investigation Card ("ICard") to alert the NYPD that there was probable cause to arrest plaintiff. (*Id.* ¶ 34.)  On May 11, 2012, members of the Staten Island Warrant Squad went to plaintiff's house in Staten Island, where he lived with his mother.  (*Id.* ¶ 35.)  At the time the Squad arrived, plaintiff was not at home but was on his way to the Staten Island Ferry with a friend.  (*Id.* ¶ 36.)  Plaintiff's mother, who was at the house, called plaintiff's cell phone to tell him that officers were looking for him.  (*Id.* ¶ 37.)  An officer spoke to plaintiff on the phone and told plaintiff that there was a warrant for his arrest due to his failure to report to his probation officer the day before.  (*Id.* ¶ 38.)  Plaintiff explained to the officer that his probation officer knew that plaintiff was planning to report on Friday because plaintiff attended school from Monday to Thursday.  (*Id.* ¶ 39; J.A. Ex. 2, Deposition of Tysean Moore ("Moore Dep.") at 65-66.)  He then provided the officer with his present whereabouts so that the Warrant Squad could pick him up and bring him into the precinct. (*Id.* ¶ 39.)

The Warrant Squad found plaintiff waiting across the street from the 120th Precinct and brought him inside, where

Detective Delacy met plaintiff and transported him to the 122nd Precinct Detective Squad. (*Id.* ¶ 41.) At the 122nd Precinct, Detective Delacy told plaintiff that a witness had identified him as being involved in a robbery and that the detective was going to put plaintiff in a lineup. (*Id.* ¶ 42.) Detective Delacy informed plaintiff that the identifying witness had reported recognizing plaintiff by his eyes. (*Id.*)

Plaintiff initialed and signed a Miranda Warning card at approximately 7:00 p.m., indicating that he understood his rights and was willing to answer questions from officers without an attorney present. (*Id.* ¶ 43; Garman Decl. Ex. G, Miranda Warning Card.) He was subsequently placed in the second position holding the number "2" in the lineup with five other black men. (*Id.* ¶¶ 44-45; Garman Decl. Ex. H1, Lineup Information Report.) D.L. observed the lineup while Detective Delacy and Sergeant Aleva were in the room and told the officers that he recognized "Number 2" as the robber. (*Id.* ¶¶ 46-47; *see* Garman Decl. Ex. H3, Lineup Administration Report.) He again specified that he recognized plaintiff's eyes. (*Id.*)

Detective Delacy arrested plaintiff on charges of First Degree Robbery and Second Degree Criminal Possession of a Weapon. (*Id.* ¶ 48.) According to plaintiff's deposition testimony, no officer gave any indication that plaintiff was being arrested or discriminated against because of his race in

6

the events leading up to plaintiff's arrest. (*Id.* ¶ 49; Moore Dep. at 106-107.) Plaintiff was brought back to the 120th Precinct and held there until being transported to Criminal Court the next morning. (*Id.* ¶ 50.)

On May 12, 2012, plaintiff was arraigned on the charges in the Criminal Complaint sworn by Detective Delacy: one count of First Degree Robbery, two counts of Second Degree Robbery, one count of Third Degree Grand Larceny, one count of Second Degree Burglary, one count of Third Degree Robbery and one count of Fourth Degree Criminal Possession of a Weapon. (*Id.* ¶¶ 51-52.) He was subsequently remanded to Rikers Island until May 15, 2012, at which point he was transported to court and ultimately released on his own recognizance. (*Id.* ¶ 53; *see* Moore Dep. at 91-92.) According to plaintiff, corrections officers told plaintiff he was being produced to testify before a grand jury. (Moore Dep. at 91.) The charges against plaintiff were dismissed on November 19, 2012. (*Id.* ¶ 54.)

Plaintiff initiated the instant action on January 1, 2013 (*see* ECF No. 1) and filed his Amended Complaint on February 25, 2013 (*see* ECF No. 6), alleged federal and state law false arrest and malicious prosecution claims, as well as discrimination pursuant to 42 U.S.C. § 1981, municipal liability, and assault and battery. On October 30, 2013, the parties filed a stipulation dismissing plaintiff's state law

claims.  (ECF No. 16.)  The instant motion for summary judgment ensued.

## DISCUSSION

### I. Legal Standard

Summary judgment shall be granted to a movant who demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56.  "A fact is 'material' for these purposes when it 'might affect the outcome of the suit under the governing law.'"  *Rojas v. Roman Catholic Diocese of Rochester*, 660 F.3d 98, 104 (2d Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  No genuine issue of material fact exists "unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.  If the evidence is merely colorable, . . . or is not significantly probative, . . . summary judgment may be granted."  *Anderson*, 477 U.S. at 249-50 (internal citations omitted).

The movant carries the burden of demonstrating the absence of a material fact issue.  *Rojas*, 660 F.3d at 104.  The court must construe the facts in the light most favorable to the nonmoving party and resolve all reasonable inferences and ambiguities against the moving party.  *Flanigan v. General Elec. Co.*, 242 F.3d 78, 83 (2d Cir. 2001).  A moving party may

indicate the absence of a factual dispute by, *inter alia*, "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B). Once the moving party has met its burden, "the nonmoving party may not rest upon mere conclusory allegations or denials." *Castro v. Cnty. of Nassau*, 739 F. Supp. 2d 153, 165 (E.D.N.Y. 2010) (internal citations and quotation marks omitted). Rather, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

## II.  Application

As an initial matter, plaintiff's counsel's affirmation in opposition to defendants' motion is not based on counsel's personal knowledge, is not supported by admissible evidence, and addresses defendants' motion regarding only plaintiff's false arrest and malicious prosecution claims. (*See generally* Ohene Affirmation)  Thus, although defendants moved for summary judgment on all of plaintiff's claims, including plaintiff's municipal liability and section 1981 discrimination claims, it appears that plaintiff has withdrawn or abandoned these two claims by failing to respond to all of defendants' arguments in his opposition. *See Johnson v. FedEx Home*

*Delivery*, No. 04-CV-4935, 2011 WL 6153425, at *8 (E.D.N.Y. Dec. 12, 2011).  Nevertheless, the Court has considered on the merits the substance of each of plaintiff's federal claims and finds that defendants are entitled to summary judgment on all claims.

## A.   False Arrest[5]

Defendants argue that they are entitled to summary judgment on plaintiff's false arrest claim because there was probable cause for plaintiff's arrest – specifically, the repeated identifications of plaintiff by D.L., the liquor store clerk who witnessed the robbery.  (Def. Mem. at 6.)  Plaintiff responds that there was no probable cause for his arrest because Detective Delacy possessed video surveillance footage from the liquor store that would have exonerated, and did ultimately exonerate plaintiff.  (Ohene Affirmation at 4-6.)  Plaintiff, however, fails to submit any evidence as to the reasons that the criminal charges against him were dismissed.  (*See id.*)

It is well-established that "probable cause is an absolute defense to a false arrest claim."  *Stansbury v. Wertman*, 721 F.3d 84, 89 (2d Cir. 2013) (internal citations and quotation marks omitted).  Probable cause to arrest exists when

---

[5] "Claims for false arrest or malicious prosecution, brought under § 1983 to vindicate the Fourth and Fourteenth Amendment right to be free from unreasonable seizures, are 'substantially the same' as claims for false arrest or malicious prosecution under state law." *Jocks v. Tavernier,* 316 F.3d 128, 134 (2d Cir. 2003) (citing *Weyant v. Okst,* 101 F.3d 845, 852 (2d Cir. 1996) (false arrest) and *Conway v. Vill. of Mount Kisco,* 750 F.2d 205, 214 (2d Cir. 1984) (malicious prosecution)).

an officer "has knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed . . . a crime." *Id.* at 89.

Significantly, the "validity of an arrest does not depend upon an ultimate finding of guilt or innocence." *Peterson v. County of Nassau*, 995 F. Supp. 305, 313 (E.D.N.Y. 1998) (citing *Pierson v. Ray*, 386 U.S. 547, 555 (1967), *overruled on other grounds by Harlow v. Fitzgerald*, 457 U.S. 800 (1982)). Instead, the relevant inquiry is into the information in possession of the arresting officer at the time of the arrest. *Id.* (citing *Anderson v. Creighton*, 483 U.S. 635, 641 (1987)). "'The question of whether or not probable cause existed may be determinable as a matter of law if there is no dispute as to the pertinent events and the knowledge of the officers, or may require a trial if the facts are in dispute.'" *Castro*, 739 F. Supp. 2d at 166 (quoting *Weyant*, 101 F.3d at 852).

The Second Circuit has held that "a victim's identification is typically sufficient to provide probable cause," absent indications of untruthfulness. *Stansbury*, 721 F.3d at 89. The evidence in the record indicates that D.L., the liquor store clerk who was behind the counter for the duration of the robbery, twice identified plaintiff as having been

involved in the robbery: once from the 45 photographs that Detective Delacy compiled in a set book, and again through a lineup of six African-American men.  Both times, he explained to Detective Delacy that he recognized plaintiff's eyes.  These identifications alone are sufficient to provide probable cause for plaintiff's arrest.  *See Garrett v. City of New York*, No. 10 CIV. 2689, 2011 WL 4444514, at *4 (S.D.N.Y. Sept. 26, 2011).

Plaintiff does not identify any evidence in the record that calls into question D.L.'s veracity.  Instead, plaintiff contends that probable cause to arrest him was lacking due to the video surveillance recording of the liquor store, which plaintiff asserts, without supporting evidence, "clearly showed that the individual identified by the eyewitness was not involved in the crime."  (Ohene Affirmation at 4.)  Plaintiff relies on a string of cases, including *Russo v. City of Bridgeport*, 479 F.3d 196 (2d Cir. 2007), to support his argument that the surveillance video was exculpatory and therefore defeated probable cause.  As defendants correctly point out, plaintiff's opposition mischaracterizes *Russo* and its application to this case.[6]  As an initial matter, in *Russo*, the

---

[6] For the reasons discussed below, the other cases cited by plaintiff on this point, one from within this circuit and three from without, are also inapposite.  *See Sanders v. English*, 950 F.2d 1152 (5th Cir. 1992) (the plaintiff adduced evidence that the defendant knowingly and willfully ignored and failed to disclose to the prosecutor substantial exonerative evidence in the underlying criminal proceeding); *Clipper v. Takoma Park, MD*, 876 F.3d 17 (4th Cir. 1989) (affirming 1983 verdict for plaintiff due to totality of evidence before the jury and noting that the officer's failure to investigate

Second Circuit granted summary judgment to the defendants on the plaintiff's false arrest claim after finding that there was no factual dispute that the plaintiff's arrest was supported by probable cause, namely, a positive photo identification by the cashier in a gas station robbery – similar to one of D.L.'s identifications of plaintiff in this case. *See Russo*, 479 F.3d at 203-204. The *Russo* court found that summary judgment was precluded, however, on the plaintiff's unreasonable 217-day detention claim, a claim not asserted here, as to two officers who actively hid and misrepresented evidence for approximately six months that was in fact exculpatory (the video in question showed that the robber did not have tattoos on his forearms, while Russo did have tattoos prior to the robbery). *Id.* at 206. The Court found that the defendants' conduct satisfied the "shock the conscience" standard for substantive due process claims and, accordingly, a reasonable fact-finder could find that the plaintiff's constitutional rights had been violated. *Id.* at 209-210.

---

the leads provided by plaintiff was not itself sufficient to negate probable cause); *BeVier v. Hucal*, 806 F.2d 123 (7th Cir. 1986) (finding officer lacked probable cause to arrest parents for child neglect where he had no indication of their intent, a necessary element, after failing to solicit information from multiple people at the scene); *Carbajal v. Vill. of Hempstead*, No. 02-CV-4270, 2006 WL 845384, at *4 (E.D.N.Y. Mar. 29, 2006) (finding issue of qualified immunity from malicious prosecution claim inappropriate for summary judgment where police officer arrested plaintiff months after the crime without viewing videotape of drug transaction or getting positive identification from the confidential informant in the transaction).

In this case, unlike in *Russo* and the other cases cited by plaintiff, there is nothing in the factual record that indicates that the surveillance video form Concord Liquor Store was (1) exculpatory on its face, (2) ignored by Detective Delacy, (3) withheld from or misrepresented to other police officers and/or prosecutors, or (4) the ultimate reason for the dismissal of charges against plaintiff. Detective Delacy testified in his deposition that he had reviewed the surveillance video numerous times prior to plaintiff's arrest and was unable to determine whether or not plaintiff was one of the three individuals involved in the robbery based on the video alone. Specifically, Detective Delacy testified that he viewed the surveillance video more than once prior to plaintiff's arrest, "knew [the video] well," could not make any identification due to the camera angles of the video, but could compare plaintiff upon seeing him with individuals in the video and was not surprised that an eyewitness identified plaintiff as one of the perpetrators. (J.A. Ex. 1, Deposition of Detective Thomas Delacy ("Delacy Dep.") at 30-33.) Thus, the evidence before the court establishes that the surveillance videos were not exculpatory as plaintiff contends, and plaintiff presents no contrary evidence. Most importantly, there is no evidence to dispute the material fact that plaintiff's arrest was supported by probable cause, based on the positive identifications by D.L.

*See Rush v. Astacio*, 159 F.3d 1348 (2d Cir. 1998); *see also Russo*, 479 F.3d at 204 (applying Connecticut law).

Finally, plaintiff's actual innocence is irrelevant to the determination of whether probable cause existed at the time of plaintiff's arrest. Thus, plaintiff's assertion that there is a disputed factual issue that needs to be presented to a factfinder regarding whether plaintiff was one of the three men who robbed Concord Liquor Store on May 5, 2012 is mistaken. (*See* Ohene Affirmation at 6.) Rather, the relevant question is whether there is a disputed issue of material fact regarding the existence of probable cause to arrest plaintiff. As discussed above, defendants have established with undisputed admissible evidence that there was probable cause to arrest plaintiff. There is nothing in the record, other than unsupported legal assertions to raise a factual dispute on the material issue of probable cause.

Accordingly, because the court finds that defendants have satisfied their burden of demonstrating that probable cause existed for plaintiff's arrest and plaintiff has not contravened defendants' evidence, defendants' motion for summary judgment on plaintiff's false arrest claim is granted.

**B.    Malicious Prosecution**

Defendants also move for summary judgment on plaintiff's malicious prosecution claim on the grounds that

(1) there was probable cause for plaintiff's prosecution and (2)
there is no evidence that actual malice motivated Detective
Delacy's actions. (Def. Mem. at 10.) Plaintiff again argues
that there was no probable cause to arrest plaintiff because
Detective Delacy had access to the purportedly exculpatory
surveillance footage. (*See* Ohene Affirmation at 4-6 (discussing
probable cause to arrest).)

"To succeed on a malicious prosecution claim under
section 1983, a plaintiff must show (1) that the defendant
commenced or continued a criminal proceeding against him; (2)
that the proceeding was terminated in the plaintiff's favor; (3)
that there was no probable cause for the proceeding; and (4)
that the proceeding was instituted with malice." *Castro*, 739 F.
Supp. 2d at 168 (internal citation omitted). Defendants do not
dispute that Detective Delacy commenced a criminal proceeding
against plaintiff or that the proceeding terminated in
plaintiff's favor when the charges against him were dismissed.

As to the third element, "the determination of
probable cause is assessed in light of the facts known or
reasonably believed at the time the prosecution was initiated,
as opposed to at the time of arrest." *Drummond v. Castro*, 522
F. Supp. 2d 667, 677-78 (S.D.N.Y. 2007) (internal citations and
quotation marks omitted). "[A] malicious prosecution claim will
be defeated by a finding of probable cause to arrest, unless the

plaintiff can demonstrate mitigating facts to vitiate probable cause which were first uncovered after the arrest." *Id.*

Plaintiff fails to identify any evidence uncovered after his arrest that would defeat probable cause. As discussed above, the surveillance video from the liquor store was available to Detective Delacy prior to plaintiff's arrest and was not dispositive of the issue of plaintiff's potential involvement in the robbery. Thus, because defendants have satisfied their burden of establishing Detective Delacy's probable cause to arrest plaintiff, the court finds that there is no outstanding factual issue regarding the existence of probable cause to prosecute plaintiff.

Plaintiff has also failed to adduce evidence that Detective Delacy was motivated by actual malice. A plaintiff need not "prove that the defendant was motivated by spite or hatred" to establish actual malice, but must demonstrate that the criminal proceeding was initiated "due to a wrong or improper motive, something other than a desire to see the ends of justice served." *Castro*, 739 F. Supp. 2d at 169-70 (quoting *Rounseville v. Zahl,* 13 F.3d 625, 630 (2d Cir. 1994)) (internal quotation marks omitted). Actual malice may be inferred from a lack of probable cause to commence a criminal proceeding. *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 131 (2d Cir. 1997)

Based on the factual record, no reasonable jury could find that the actual malice element is met, because there is no evidence that Detective Delacy was motivated by "something other than a desire to see the ends of justice served." Furthermore, as set forth in greater detail above, the record is replete with undisputed facts, supported by admissible evidence, that indicate that there was probable cause to arrest and initiate the prosecution against plaintiff. Therefore, the court grants summary judgment to defendants on plaintiff's malicious prosecution claim.

C.   **Qualified Immunity**

Defendants argue that, even if the court were to find disputed issues of material fact regarding plaintiff's section 1983 claims, summary judgment is warranted on those claims because Detective Delacy is entitled to qualified immunity. (Def. Mem. at 12-14.) Although the court finds that defendants are entitled to summary judgment on the merits of plaintiff's false arrest and malicious prosecution claims, the court also finds that, in the alternative, Detective Delacy is entitled to qualified immunity as a matter of law.

The doctrine of qualified immunity protects government officials from civil liability when their "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow,* 457 U.S.

at 818.  An arresting officer lacking probable cause to arrest is nonetheless entitled to qualified immunity on false arrest and malicious prosecution if it was objectively reasonable for the officer to believe that probable cause existed or officers of reasonable competence could disagree on whether the probable cause test was met.  *Walczyk v. Rio,* 496 F.3d 139, 163 (2d Cir. 2007).  This standard, often referred to as "arguable probable cause," is met "when a reasonable police officer in the same circumstances and possessing the same knowledge as the officer in question *could* have reasonably believed that probable cause existed in the light of well established law."  *Cerrone v. Brown,* 246 F.3d 194, 203 (2d Cir. 2001) (internal citations and quotation marks omitted) (emphasis in original).

D.L.'s repeated identifications of plaintiff provided Detective Delacy with at least arguable probable cause for plaintiff's arrest.  Based on the representations D.L. made to the police officers, the certainty with which he made his identifications, and the basis he gave for recognizing plaintiff, a reasonable police officer certainly could have believed that there was probable cause to arrest plaintiff. Plaintiff cannot demonstrate otherwise.  The only argument that plaintiff has set forth in his opposition to defendants' motion with regard to any of defendants' arguments is that the surveillance video was plainly exculpatory.  (*See generally*

Ohene Affirmation.)  The court has reviewed the liquor store surveillance videos and finds that there is nothing in the videos, however, that indicates that it would have been unreasonable for Detective Delacy to believe that he had probable cause to arrest plaintiff.  Therefore, even if Detective Delacy lacked probable cause to arrest plaintiff, the court concludes that there are no disputed issues of material fact as to whether he had arguable probable cause.  As a result, Detective Delacy is entitled to qualified immunity on plaintiff's false arrest and malicious prosecutions claims.

### D.    Section 1981 Discrimination

As noted above, plaintiff appears to have abandoned his claim for discrimination under Section 1981.  Defendants argue that they are entitled to summary judgment on this claim because it is plainly contradicted by plaintiff's deposition testimony.  In his deposition, plaintiff testified that he did not believe that Detective Delacy or any other officer arrested plaintiff or discriminated against plaintiff on the basis of race.  (Def. 56.1 Stmt. ¶ 49; Moore Dep. at 106-107.) Furthermore, plaintiff has failed to identify any evidence in support of his section 1981 claim.  Thus, the court grants summary judgment to defendants on plaintiff's claim under section 1981.

**E.    Municipal Liability**

Defendants also moved for summary judgment on plaintiff's claims against the City and plaintiff failed to respond.  (*See* Def. Mem. at 14-16; *see generally* Ohene Affirmation)  Thus, the court treats this claim as abandoned. Moreover, even if plaintiff intended to pursue his municipal liability claim, the court finds that summary judgment on this claim is appropriate because will be unable to prove this claim based on his lack of discovery of any evidence in support of such a claim.

A municipality will be liable for constitutional claims under section 1983 only if the alleged offending conduct was undertaken pursuant to "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by [the municipal] officers" or a government custom, "even though such a custom has not received formal approval through the . . . [municipality's] official decisionmaking channels."  *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978).  It is well-settled that municipal liability under section 1983 cannot be based on a theory of *respondeat superior*. *See, e.g.*, *Matusick v. Erie Cnty. Water Auth.*, 757 F.3d 31, 62 (2d Cir. 2014); *Monell*, 436 U.S. at 690-91.

To satisfy the "municipal policy or custom" element, a plaintiff must establish one of the following: "(1) the

existence of a formal policy which is officially endorsed by the municipality; (2) actions taken or decisions made by municipal officials with final decision making authority, which caused the alleged violation of plaintiff's civil rights; (3) a practice so persistent and widespread that it constitutes a custom of which constructive knowledge can be implied on the part of the policymaking officials; or (4) a failure by policymakers to properly train or supervise their subordinates, amounting to "deliberate indifference" to the rights of those who come in contact with the municipal employees." *Naples v. Stefanelli*, 972 F. Supp. 2d 373, 387 (E.D.N.Y. 2013) (internal citations omitted).

Because plaintiff has failed to raise a material fact issue as to his false arrest, malicious prosecution, and discrimination claims, his municipal liability claim also fails. *See Matican v. City of New York*, 424 F. Supp. 2d 497, 508 (E.D.N.Y. 2006), *aff'd*, 524 F.3d 151 (2d Cir. 2008) ("municipal liability cannot exist if the individual defendants have not violated the plaintiff's constitutional rights"). Separately, however, plaintiff has not identified any evidence whatsoever that would indicate, or allow an inference of, the existence of either any policy, practice, or custom, formal or otherwise, or any act that may fairly be said to represent official policy, connected to the alleged unconstitutional acts by Detective

Delacy.  Accordingly, the court grants summary judgment in favor of defendants on plaintiff's *Monell* claim.

## CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment is granted in its entirety.  The Clerk of the Court is respectfully requested to enter judgment in favor of defendants and close this case.


**SO ORDERED.**

Dated: Brooklyn, New York
　　　March 16, 2015

```
_____/s/_____
```
**KIYO A. MATSUMOTO**
United States District Judge
Eastern District of New York